## Neuls, Appellant, *v.* Scranton City.

*Municipalities—Public officers—Removals—City assessor.*

The Act of March 7, 1901, P. L. 20, relating to the government of cities of the second class, authorizes the removal by the city recorder, appointed by the governor, of a city assessor before the end of the term for which he was elected. The 2d section of the schedule of the act which is a merely temporary expedient, is not in conflict with section 1, article 12, which relates to the permanent form of government for cities of the second class.

*Constitutional law—Public officers—Abolition of office.*

The Act of March 7, 1901, P. L. 20, relating to the government of cities of the second class, is constitutional.

Argued Jan. 20, 1902. Appeal, No. 57, Jan. T., 1902, by

plaintiff, from judgment of C. P. Lackawanna Co., Sept T., 1901, No. 273, on case stated in suit of John Neuls v. Scranton City. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Case stated to determine liability of defendant for salary of plaintiff.

The opinion of the Superior Court states the case.

The court entered judgment for the defendant on the case stated.

*Error assigned* was the judgment of the court.

*Charles W. Dawson,* for appellant.—The legislature intends to impart to its enactments such a meaning as would render them operative and effective, and to prevent persons from eluding or defeating them: City of Phila. v. Ridge Ave. Pass. Ry. Co., 102 Pa. 190.

The construction of the statute will be such as to avoid any change in the prior laws beyond what is necessary to effect the specific purpose of the act in question: Penna. R. R. Co. v. Canal Comrs., 21 Pa. 9.

That as this act is both an extension and amendment to the act of 1897, as relates to assessors, it is unconstitutional, clearly violating said article 3, section 6 of the constitution of Pennsylvania: Barrett's Appeal, 116 Pa. 486; Donohugh v. Roberts, 11 W. N. C. 186; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Pittsburg's Petition, 138 Pa. 401; Norristown v. Norristown Pass. Ry. Co., 148 Pa. 87; Woodward v. Wilkes-Barre, 4 Kulp, 125.

Where the constitution has declared upon what grounds an officer may be removed, it is beyond the power of the legislature to remove or suspend him from office in any other mode than the constitution itself has furnished: Brown v. Grover, 6 Bush (Ky.), 1; State v. Draper, 50 Mo. 353; State v. Thoman, 10 Kan. 191; Com. v. Gamble, 62 Pa. 343; Reid v. Smoulter, 128 Pa. 324; French v. Com., 78 Pa. 339; Barker v. Pittsburg, 4 Pa. 51; Com. v. Moir, 199 Pa. 534; Com. v. Mann, 5 W. & S. 418.

The term "all officers" used in article 6, section 4 of the consti-

tution of Pennsylvania, means municipal as much as any other officers: Com. v. Sanderson, 11 Pa. C. C. Rep. 593 ; Buchaleu on Const. of Penna. 185.

*G. M. Watson,* city solicitor, with him *David J. Davis,* assistant city solicitor, for appellee.—An office not constitutional exists by the will of the legislature only, and may be abolished at any time, and the incumbent has no standing to complain: Commonwealth v. Weir, 165 Pa. 284; Lloyd v. Smith, 176 Pa. 221 ; Kilgore v. Magee, 85 Pa. 401.

The act is constitutional: Com. v. Moir, 199 Pa. 534.

OPINION BY W. D. PORTER, J., April 28, 1902:

The city of Scranton was in February, 1899, a city of the third class, and the plaintiff was at the municipal election in that month elected a city assessor, under the provisions of the Act of May 23, 1889, P. L. 317, to serve for the term of three years from the ensuing first Monday of April. The city having become a city of the second class was subject to the provisions of the Act of March 7, 1901, P. L. 20, for the government of cities of that class. The recorder of the city, who had been duly appointed by the governor of the commonwealth in accordance with the provisions of the last mentioned act, removed the plaintiff from the office of assessor and appointed his successor on the first Monday of April, 1901. The plaintiff denied the legality of such removal from office and brought this action to recover the amount alleged to be due him for salary as assessor after such removal. The parties agreed upon the case stated which presents two questions. Did the act of March 7, 1901, authorize the removal, by the city recorder, of the plaintiff from the office of city assessor before the end of the term for which he was elected? If the act did authorize such removal, was such provision constitutional?

There can be no question that the 2d section of the schedule of the act of 1901 authorized the city recorder appointed by the governor to remove the city assessors then in office and appoint their successors. It is contended upon behalf of the appellant, however, that this provision is in conflict with section 1, article 12 of the statute, which provides that the board of assessors shall be chosen by the qualified electors of the city, at the

regular municipal election, at the end of the term of the present incumbents.   A careful reading of the sections of the statute in question does not disclose any such conflict.   The provisions of article 12 relate to the permanent form of government for cities of the second class.   When the act became a law there were in the commonwealth three cities of the second class, in two of them the city assessors had been elected by the city councils, and in the third, the city of Scranton which had passed from the ranks of cities of the third class into those of the second, there were three city assessors who had been elected by the qualified electors of the city.   The act of 1901 created the department of assessors one of the executive departments of the municipal government, and requires that it shall consist of five persons.   The provision of the article under which the appellant seeks refuge makes the members of this executive department elective under the permanent form of government, but fixes the time when they shall be chosen and enter upon the discharge of their duties at a date in the future.   The schedule, on the other hand, is a temporary expedient which makes provision for the discharge of the duties appertaining to this branch of the city government during the period which must intervene before the assessors chosen by the electors enter upon the discharge of their duties.   One of the sections of the statute which are alleged to be in conflict relates to the form of government when permanently established.   The other is a transitory provision intended to meet the requirements of the temporary situation.   They relate to different periods of the change from one form of government to the other, and one ceases to have force when the other goes into effect.   There was a manifest necessity for some such temporary provision in order to secure some sort of uniformity during the period of transition.   The city of Scranton had but three assessors, who had been elected while the city was one of the third class ; and the qualifications fixed by the statute under which they were elected were not such as to meet the requirements of the act of 1901, the former law was satisfied by a residence of five years in the city, while under the latter statute only those who had been residents of the city for at least ten years are eligible to the office of assessor.   The old board of assessors of the city of Scranton did not have the requisite number of persons, and had not been chosen

with a view to the qualifications necessary under the provisions of the act of 1901 to constitute the department of assessors. The assessors in office in that city were not, by the act of 1889, authorized to sit as a board of appeals, that duty under their old form of government being discharged by a joint committee of councils. The board of assessors of that city had not, with regard to its numbers, and the qualifications of its members and the duties which it was to discharge, been so constituted as to meet the requirements of a department of assessors within the provisions of the act of 1901. There can be no doubt that it was the legislative intent by this statute to authorize the city recorder appointed by the governor to remove from office the members of the board of assessors of a city of the second class.

The constitutionality of the act of 1901 is no longer a question for profitable discussion; all the objections raised by the appellant have been definitely disposed of by the Supreme Court in the case of Commonwealth v. Moir, 199 Pa. 534. Mr. Justice MITCHELL, who spoke for the court, said: "There is no right to a public office unless it is under the express protection of the constitution, and such protection is nowhere given to municipal officers. On the contrary the universal rule is that unless otherwise directed by the new act, the officers go out with the charter under which they held, and the officers under the new charter take their places whether under the same or a different name. Merely official positions, unprotected by any special constitutional provisions, are subject to the exercise of the power of revision and repeal by the legislature." And again: "Of the objection that the citizens are deprived of an opportunity of electing the chief executive, it is sufficient to say that there is no constitutional right of election in reference to that office. The legislature might make it permanently appointive, and what they could do permanently they may do temporarily . . . . that the prolongation of a temporary appointment to a vacancy beyond an election not unduly close at hand, is unusual and contrary to what citizens are accustomed to regard as their moral and political rights may be conceded, but that does not make it unconstitutional." That decision is binding upon us, and the judgment of the court below is affirmed.