# Robbins *v.* Wilkes-Barre, Appellant.

*Public    officers—Compensation—Fees—Statute—Ordinance—Acts    of April 5, 1867, P. L. 841, May 4, 1871, P. L. 539, and May 23, 1874, P. L. 230.*

When a public officer claims a salary, fees, or compensation for services rendered to the public, he must show a statute, or a municipal ordinance authorized by statute, giving compensation. If he cannot do this he cannot recover.

The provisions of the Act of April 5, 1867, P. L. 841, fixing the compensation of auditors of the old borough of Wilkes-Barre, at "two and one-half dollars, for each day's actual service," were not extended by the Act of May 4, 1871, P. L. 539, entitled: "An Act incorporating the city of Wilkes-Barre" to the auditors of the city.

Where a statute provides that auditors shall be compensated at "two and one-half dollars, for each day's actual service," an auditor has no claim against the municipality, if it appears that he rendered no actual service, being prevented from so doing by the action of the municipal officers in refusing to submit to them their books. In such a case it is the auditor's duty to compel the officials by mandamus to submit to him their books.

*Public    officers—Municipalities—Constitutional    officers—Change    of duties—Abolition of officers.*

The offices of a municipality are not public offices under the protection of the constitution. Such office exists by the will of the legislature only, and may be changed, its duties transferred to some other department of the municipality, or entirely abolished at any time, and the incumbent has no standing to complain.

Where a municipality becomes a city of the third class by operation of the Acts of May 23, 1874, P. L. 230, and May 23, 1889, P. L. 277, and the term of one of the auditors, as extended by sec. 57 of the Act of May 23, 1874, P. L. 230, expires, the office is at once abolished, and as the special Act of May 4, 1871, P. L. 539, relating to such city expressly provides that the auditing shall be done by a board composed of three auditors, the fragment of the board remaining in office are without authority to perform the duties contemplated by that act, and the board as a board ceases to exist.

Argued March 4, 1908. Appeal, No. 45, Jan. T., 1908, by defendant, from order of C. P. Luzerne Co., Oct. T., 1905, No. 309, dismissing exceptions to report of referee in case of

Isaac V. Robbins v. Wilkes-Barre.  Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Reversed.

Exceptions to report of James M. Stack, Esq., referee.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to report of referee.

*Charles F. McHugh,* city solicitor, for appellant.—The surrender of the special charter of Wilkes-Barre in the manner provided by sec. 57 of the act of 1874, put in force on April 1, 1899, all of the provisions of the acts of 1874 and 1889, and their supplements.  The duties of the auditors were abolished. But through an unfortunate use of general language in sec. 57, the terms of all offices were extended.   In theory, the office of city auditor under the special charter continued to exist, so far as this plaintiff is concerned, until the third Tuesday of February, 1901, but the actual  service which the act of 1867 required was made impossible because the duties were repealed. An office is not the property of the officeholder, but is a public trust or agency: McCormick v. Fayette County, 150 Pa. 190; Braughler v. Weir, 165 Pa. 284.

*W. Alfred Valentine,* with him *G. Fred Lazarus,* for appellee. —The term of appellee's office was legally extended to embrace the time for which judgment was entered: Com. ex rel. v. Ricketts, 196 Pa. 598; Com. ex rel. v. Nichols, 10 Kulp, 193; Com. v. McCombs, 56 Pa. 436; Com. v. Weir, 165 Pa. 284; Reading v. Savidge, 124 Pa. 328.
Appellee had a vested interest in his office during the time for which his term was extended: Com. ex rel. v. Troxel, 20 W. N. C. 549; Welchans v. Shirk, 98 Pa. 17; Rink v. Philadelphia, 15 W. N. C. 345; Phila. v. Given, 60 Pa. 136; Jenkins v. Scranton, 205 Pa. 598; Stadler v. Detroit, 13 Michigan, 346; Lloyd v. Smith, 176 Pa. 213; Andrews v. Portland City, 79 Me. 484 (10 Atl. Repr. 458); Jones v. Easton, 4 Pa. Dist. Rep.

509; Com. v. Slifer, 25 Pa. 23; County of Luzerne v. Trimmer, 95 Pa. 97.

OPINION BY PORTER, J., October 12, 1908:

The plaintiff brought this action to recover of the city of Wilkes-Barre compensation at the rate of $2.50 per day for the time which he alleged it would have required him to audit the accounts of the various officers of said city between the first Monday of April, 1900, and February 22, 1901, had he been permitted during that period to perform the duties of city auditor. The plaintiff was elected a city auditor in February, 1897, for the term of three years, from the first Monday of April, 1897, to the first Monday of April, 1900. He served during the term for which he was elected, and admits that he was paid for his services during that term. The plaintiff contends, however, that, the city having become a city of the third class in September, 1898, his term of office was by section 57 of the Act of May 23, 1874, P. L. 230, extended from the first Monday of April, 1900, when it would have expired under the old charter, to the Friday succeeding the third Tuesday of February next following that date. The city had been governed under a special charter at the time of the election of the plaintiff, but having in the manner prescribed by the act of May 23, 1874, section 57, accepted the provisions of that statute governing cities of the third class, the governor of the commonwealth, on September 23, 1898, issued his letters patent certifying the surrender of the former charter and the city thereupon became a city of the third class. A city comptroller was duly elected on the third Tuesday in February, 1899, and that officer assumed the duties of the office on the first Monday of April, 1899, and has since that time continued to discharge all the duties formerly performed by the city auditors. The comptroller audited the accounts and expenditures of the city currently from the first Monday of April, 1899, the auditing being done at the time the expenditure was made. The city auditors had audited the accounts of the various officers after the expiration of each fiscal year, which occurred on the first Monday of April in each year, so that the accounts for each current year remained, under the old system, unaudited

until after the expiration of the year. This system resulted in leaving the accounts for the year beginning the first Monday of April, 1898, and ending the first Monday of April, 1899, unaudited at the time the city comptroller entered upon the discharge, of the duties of his office. This plaintiff and his associate auditors proceeded during the years 1899 and 1900 to audit the accounts of the various officers for the years 1898 and 1899 and had completed that work on the first Monday of April, 1900, when the term for which this plaintiff had been regularly elected expired; for this work the plaintiff and his associates were paid by the city. The plaintiff subsequently made a demand on the city officers for their books and accounts for the year between the first Mondays of April, 1899 and 1900, which had already been audited by the comptroller, the officers declined to submit their accounts to the auditors and neither the plaintiff nor his associates did any auditing during that year, but this plaintiff asserts that he held himself ready during the entire period until February 22, 1901, to audit the accounts of the city officers, and asserting that he was unlawfully deprived of the right to audit the accounts, he demands compensation at the rate of $2.50 a day for every working day during that entire period. The plaintiff founds his contention upon section 57 of the Act of May 23, 1874, P. L. 230, which regulates the manner in which a city having a special charter may accept the provisions and become subject to the legislation governing cities of the third class; the particular provision upon which the plaintiff relies being in the following words, viz.: "The mayor and councils, school directors or comptrollers and other officers of such city, shall continue to hold their respective offices until the Friday succeeding the third Tuesday of February next following the expiration of their office, as fixed by law before the surrender of the former charter." The plaintiff recovered a judgment in the court below and the defendant appeals.

It is necessary to review the legislation creating the office of auditor of the city of Wilkes-Barre and regulating the compensation of the officers, in order to properly pass upon the rights of this plaintiff. The first statute referred to by counsel and the learned referee who passed upon the case in the court below is

the Act of April 5, 1867, P. L. 841, being a special statute conferring additional powers upon the borough of Wilkes-Barre. In section 3 of that statute we find these provisions, viz.: "At every annual borough election, it shall be lawful to elect one borough auditor, to hold the office three years, three auditors constituting a full board; and it shall be the duty of said auditors, annually, or before the tenth day of April of each year, to audit, settle and adjust, all claims and accounts whatsoever, by, or against the borough, the school directors, overseers of the poor, collectors of taxes, and any other claims and accounts whatsoever; and for said services said auditors shall each be entitled to receive two and one-half dollars for each day's actual service, payable out of the funds of the borough, school directors, or overseers of the poor, according to the claims or accounts, audited; it shall be their duty to publish, annually, a full statement, or exhibit, of the several accounts so audited by them, on  or before the fifteenth day of April of each year." The Act of May 4, 1871, P. L. 539, entitled "An act incorporating the city of Wilkes-Barre" provided for the election of officers of the city on the first Tuesday in June, 1871, and on the first Tuesday in May annually thereafter, and required the election, among other officers of three persons to be auditors, one of whom shall serve for one year, one for two years, and one for three years; "and from and after said election, the powers, offices and duties of the burgess, auditors, high constable and council of the borough of Wilkes-Barre, and those of the several officers by them appointed shall cease and expire."  The act incorporating the city, while thus completely wiping out "the powers, offices and duties of the auditors of the borough of Wilkes-Barre," makes no attempt to define the duties of the auditors of the city save what is to be implied from section 26, which requires that "the council shall, once in every year, cause to be published in two newspapers, published in said city a just and true abstract of the auditors' report on the accounts for the preceding year, showing the receipts, expenditures and financial condition of the city."  The only provision of this statute incorporating the city which provides for or authorizes compensation to the auditors of the city for the services to be by them

performed is to be found in section 26: "The council shall have power, and are hereby directed to fix the compensation to be paid to all officers required by this charter, or the by-laws or ordinances made in pursuance thereof, not otherwise provided by law." The plaintiff did not offer in evidence any ordinance of the city fixing or allowing any compensation to the city auditors, nor has the learned counsel for the appellee called our attention to any act of assembly which makes provision for the payment of such auditors, other than the above quoted provision vesting the power in the council of the city. The appellee relies exclusively upon the provision of the Act of April 5, 1867, P. L. 841, fixing the compensation of the auditors of the old borough of Wilkes-Barre, at "two and one-half dollars, for each day's actual service." It is manifest that this provision cannot be made to apply to the auditors of the city of Wilkes-Barre, of which the borough of Wilkes-Barre became a part. The creation of the city of Wilkes-Barre, in 1871, was an exercise of the sovereign power which at that time was, in such matters, free from constitutional limitations. The borough of Wilkes-Barre and the township of Wilkes-Barre were incorporated into a city. The borough as a distinct municipality ceased to exist, and there was no more reason why the city auditors should be paid the amount which the borough auditors had formerly received than there was for regulating their compensation by what had been formerly paid the township auditors. The legislature, however, in this matter left nothing to inference, for it expressly declared that the powers, offices, and duties of the auditors of the borough of Wilkes-Barre should cease and expire. The auditors of the city of Wilkes-Barre were not therefore the successors in office of the auditors of the old borough. The power to fix the compensation of the city auditors was by the legislature expressly delegated to the council of the city. When a public officer claims a salary, fees, or compensation for services rendered to the public, he must show a statute or a municipal ordinance authorized by statute giving compensation. If he cannot do this, he cannot recover: Rothrock v. Easton School District, 133 Pa. 487. The plaintiff having failed to show any ordinance of the city fixing the amount of his compensation, the defendant

was entitled to an unqualified affirmance of its request for a finding, that under all the evidence the judgment must be for the defendant, and the first assignment of error is sustained.

Even if it be assumed that the provisions of the act of 1867, defining the duties and fixing the compensation of the board of auditors of the borough of Wilkes-Barre, continued in force and applied to the board of auditors under the government of the city incorporated by the act of 1871; or if the council of the city subsequently to 1871 did ordain that the city auditors should be compensated at the rate of $2.50 for each day of actual service, the plaintiff was still not entitled to recover upon the facts as presented in the court below. The compensation permitted under the act of 1867 was not a fixed salary nor was it fees; it was a per diem allowance for each day of actual service by the auditors in the performance of their duty, and there could be no recovery, under this statute, for time which was not actually spent in the discharge of such duties. The city could not be charged because its ministerial officers refused to submit their books and the accounts were thus permitted to remain unaudited. The duty of the various officers to submit their books to the board of auditors, if such duty existed, was a purely ministerial one and performance could have been compelled by mandamus. If it was the duty of the board of auditors to audit the accounts, they could only become entitled to the compensation upon performance of the work for which they are asking to be paid. They could not permit the accounts to remain unaudited and then demand payment for the time which the performance of their duty would have required. The plaintiff neither alleged nor proved that he had spent a single day in the actual performance of his duties; all that he did prove was that certain officers of the city had refused to perform the ministerial act of submitting their accounts for auditing, and because of that refusal he now seeks to recover of the city compensation for the time which would have been required in the performance of the duty, which he did not perform. The plaintiff offered no evidence tending to establish that there had been any corporate action of the municipality, as such, which interfered with the action of the board of auditors.

Municipal corporations are created, governed and the extent of their powers determined by the legislature and subject to change, repeal or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers, or even their corporate existence. The offices of the municipality are not public offices under the protection of the constitution, and the legislature has the power in imposing a new form of government on a city to change the duties and compensation pertaining to the various municipal offices or to abolish any office and consolidate its duties with some other department of the city government: Commonwealth v. Moir, 199 Pa. 534; Neuls v. Scranton City, 20 Pa. Superior Ct. 286. An office which is not constitutional exists by the will of the legislature only, and may be changed, its duties transferred to some other department of the municipality, or entirely abolished at any time, and the incumbent has no standing to complain: McCormick v. Fayette County, 150 Pa. 190; Commonwealth v. Weir, 165 Pa. 284; Lloyd v. Smith et al., 176 Pa. 213. The Acts of May 23, 1874, P. L. 230, and May 23, 1889, P. L. 277, providing for the incorporation and government of cities of the third class require the election of a city comptroller, transfer to that officer all the duties of city auditors and by clear implication abolish the last-named office. Section 57 of the act of 1874 does in general terms extend the terms of the mayor, councils, school directors and other officers of cities which surrender their special charters and become cities of the third class and the board of auditors of the city of Wilkes-Barre would come within this general designation. This provision was intended as a temporary expedient to bridge over the period of change from one form of government to another. It is not to be construed in such a manner as to defeat the general purpose of the entire statute and is not to control other sections of the act to which it is absolutely repugnant. The statute is to be so construed, if possible, as to give effect to all its provisions. The act of 1874, section 39, ordains that: "The qualified electors of each of said cities of the third class shall on the third Tuesday in February succeeding the issuing of letters patent thereto, . . . . elect a city comptroller to serve for the term of

two years, from the first Monday of March next succeeding his election; he shall before entering upon his office take and subscribe an oath or affirmation before the mayor faithfully to discharge the duties thereof," and then follow eight clauses defining the duties and powers of said officer, among which are " all the duties now enjoined on the county auditors by the laws of this state, and shall scrutinize, audit and settle all accounts whatever in which the city is concerned, either as debtor or creditor." This section unquestionably transferred to and imposed upon the comptroller all the duties that had formerly been performed by the board of auditors of the city of Wilkes-Barre. The city of Wilkes-Barre became a city of the third class on September 23, 1898, and the section of the act of 1874 last referred to required that a city comptroller should be elected on the third Tuesday in February, 1899, and that he should enter upon the discharge of the duties imposed upon him by the statute on the first Monday of March next succeeding his election. The law required that all expenditures by the city after that date should be supervised by the comptroller and that he should audit and settle all the financial transactions of the city arising after he so entered upon the duties of his office. It is not necessary to determine how long the board of auditors nominally remained in office, all the duties which that board had formerly performed were, as to the financial transactions of the city arising after the first Monday of March, 1899, transferred to and imposed upon the city comptroller.

When, in 1898, the city of Wilkes-Barre became a city of the third class, it had among its officers this board of auditors, composed of three persons. One of this board of auditors had been elected in 1896, the term for which he was elected expiring on the first Monday of April, 1899, another, this plaintiff, had been elected in 1897, the term for which he was elected extending to the first Monday of April, 1900, and the third auditor had been elected in 1898, for the term ending the first Monday of April, 1901. The city having become a city of the third class no auditor could lawfully have been elected in 1899, to succeed the member of the board whose term expired on the first Monday of April, 1899, but the effect of section 57 of the act of 1874

was to extend the term of that member of the board from the first Monday of April, 1899, to the Friday following the third Tuesday in February, 1900, thus continuing the board of auditors of the full number contemplated by the act of 1871. When the city surrendered its charter and became a city of the third class the board of auditors were engaged in auditing the accounts for the year ending the first Monday of April, 1898, and the board continued that work until almost the end of that fiscal year. The accounts for the fiscal year beginning the first Monday of April, 1898, had not been audited when the newly elected city comptroller entered upon the discharge of his duties on the first Monday of March, 1899, and as the expenditures had already been made under the old system the act of 1874 did not contemplate the auditing of those accounts by the new officer under the new system provided by that statute. The result of the continuance in office of the board of auditors, by section 57 of the act of 1874 of the full number required by the act of 1871 was that there was from the first Monday of April, 1899, to the Friday following the third Tuesday in February, 1900, a board of auditors duly authorized to audit the accounts of the city officers during the period intervening between the first Monday of April, 1898, and the first Monday of March, 1899. The purpose of section 57 of the act of 1874 was thus accomplished. The board of auditors constituted as required by the act of 1871 had jurisdiction to audit and did audit the accounts of the city officers down to the first Monday of March, 1899, and all accounts subsequent to that time were audited by the city comptroller, as required by the act of 1874. The Act of April 5, 1867, P. L. 841, relating to the borough of Wilkes-Barre, and the Act of May 4, 1871, P. L. 539, incorporating the city of Wilkes-Barre, each provided for an auditing of the accounts of the various city officers by a board composed of three auditors. The duties of this board were in their nature deliberative or judicial, and in case all the auditors convened a majority of the board were vested with the power to adjudge. It may be, for the purposes of this case, conceded that two of the auditors, in case the third could not attend or even in case of a vacancy, had the

392     ROBBINS *v.* WILKES–BARRE, Appellant.

Opinion of the Court—Concurring Opinion.    [37 Pa. Superior Ct.

power to act. When, however, on the Friday following the third Tuesday in February, 1899, the term of one of the auditors, as extended by section 57 of the act of 1874, expired he, by the express provision of the statute went out of office, and, as the office had been abolished, no successor could be elected. This was something more than the mere happening of a vacancy; to fill the board to the number required by the act of 1871 would be unlawful. The act of 1871 required that the auditing should be done by a board composed of three auditors, the purpose of requiring this number was because the advice and opinions of all might be useful, though all might not unite in the opinion. When as the result of subsequent legislation it became impossible to lawfully convene the board of three auditors required by the act of 1871, the fragment of the board remaining in office were without authority to perform the duties contemplated by that act, and the board, as a board, ceased to exist: Baltimore Turnpike, 5 Binney, 481.

The judgment of the court below is reversed and judgment is now entered in favor of the defendant.

RICE, P. J., concurring:

As I understand the opinion of the majority of the court upon the first question discussed, it would logically follow that even if it had been the plaintiff's duty to audit the accounts of the year in question, and he had audited them, nevertheless, he could not recover in this action because he failed to show any ordinance or local act fixing the compensation of city auditors in the city of Wilkes-Barre. This necessarily involves a decision that the provision of sec. 10 of the act of 1871, keeping in force certain acts relating to the borough of Wilkes-Barre, was not effectual to keep in force and make applicable to auditors elected after Wilkes-Barre became a city the provision of sec. 3 of the act of 1867 quoted in the opinion. I am not at present prepared to commit myself to that proposition, and as the case appears to have been tried in the court below, and certainly was argued here, upon the theory that at the time the plaintiff was elected the compensation was legally fixed at "two and one-half dollars for each day's actual service," and as we hold that

even in that view the plaintiff is not entitled to recover, I feel justified in withholding an expression of opinion upon the question of the applicability of the act of 1867. As to the other ground of decision, I concur in the conclusion and in the reasoning of our Brother PORTER's opinion in support of it.

HENDERSON, J., concurred in the judgment.